IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRI EUGENIA HERRING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-CV-692-KFP |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Terri Eugenia Herring appeals the denial of her application for Social Security benefits under 42 U.S.C. § 405(g). The Court construes Herring's brief in support of her Complaint (Doc. 5) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. 8). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' memorandum, the Court finds Herring's motion for summary judgment is due to be DENIED, the Commission's motion for summary judgment is due to be GRANTED, and the Commissioner's decision is AFFIRMED.

**I.    PROCEDURAL HISTORY**

Ms. Herring was 43 years old on the alleged onset date and was 47 years old at the time of the ALJ's on March 16, 2022 decision. *See* R. 21–28. Ms. Herring received her

high school diploma and attended two years of college. R. 42–43. She has past work experience as a patient representative, a laboratory clerk, and a retail assistant manager. R. 43–44, 63.

Plaintiff alleged disability beginning August 9, 2018, due to coronary artery disease, diastolic congestive heart failure, hypertension, diabetes, anemia, shortness of breath, migraines, high cholesterol, and a heart attack in November 2019. R. 261. After her claim was denied initially and, again, on reconsideration, she filed a request for hearing on August 5, 2020. R. 17. The ALJ held a hearing in December 2021 and issued a decision on March 16, 2022, finding Plaintiff not disabled. R. 14–28, 38–67. The Appeals Council denied review. R. 1–6. This case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.    SUMMARY OF THE ALJ'S DECISION

The ALJ found Plaintiff had severe impairments of obesity, coronary artery disease (CAD) status post PCI to LAD, diabetes mellitus type II, hypertension, and headache disorder. R. 20. Next, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id*. After considering the record as a whole, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except:

> [she] can frequently push/pull with both the upper and lower extremities on a bilateral basis[; she] can never climb ladders, ropes, or scaffolds, or work at unprotected heights or with hazardous machinery[; she] can frequently climb ramps and stairs, frequently balance, and can also frequently stoop, kneel, and crouch[; she] can occasionally crawl[; and she] can frequently handle and finger with her right hand.

R. 21. The RFC limits Plaintiff in that she must avoid concentrated exposure to extreme cold, extreme heat, Level 5 noise in the DOT, as well as to fumes, odors, dusts, gases, and poor ventilation. R. 21.

The ALJ questioned the vocational expert based on Plaintiff's limitations and her past relevant work. R. 27, 63–64. The VE testified that Plaintiff could perform her past relevant work as a patient representative. R. 63–64. Thus, based upon the record, the ALJ found Plaintiff was not disabled.

### III. STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. Under 42 U.S.C. § 405(g), the Court has jurisdiction to review the Commissioner's decision because Claimant has exhausted her administrative remedies. The Court is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Commissioner's findings of fact are conclusive if the Commissioner supported her findings of fact with substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). When determining whether the Commissioner supported his findings with substantial evidence, the Court must view the evidence as a whole, taking into account both favorable and unfavorable evidence relating to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983). If the Court determines substantial evidence supports the Commissioner's decision, the Court must affirm—even if the Court finds a preponderance of evidence against the decision. *Id.*

## IV.   DISCUSSION

Ms. Herring presents one issue on appeal: whether the ALJ erred by not ordering a consultative examination. Doc. 5 at 2. Ms. Herring argues the ALJ failed to develop the record fully and fairly because he did not order a consultative exam related to Ms. Herring's heart condition and the extent of resulting physical limitations. In response, the Commissioner argues Ms. Herring failed to show there is a clear evidentiary gap that prejudiced Ms. Herring, and that the ALJ's RFC decision was supported by substantial evidence.

The ALJ has a basic obligation to develop a full and fair record. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). When there is "ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," the ALJ's duty to develop the record may require him to order a consultative examination. *Prunty v. Colvin*, No. 1:13-CV-00254-MP-GRJ, 2015 WL 1409664, at *7 (N.D. Fla. Mar. 26, 2015), *aff'd sub nom. Prunty v. Acting Comm'r of Soc. Sec. Admin.*, 635 F. App'x 757 (11th Cir. 2015). The ALJ need not order a consultative examination where "the record contains sufficient information for [the ALJ] to make an informed decision." *Ingram*, 496 F.3d at 1269 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). "Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient

4

to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)). Before the Court will remand a case for further development of the record, the court is guided by considering whether the ALJ's failure to develop the record led to evidentiary gaps, which resulted in unfairness or clear prejudice. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995)). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted).[1]

Here, there was sufficient evidence in the record to support the ALJ's RFC, including any limitations related to Ms. Herring's heart condition. First, the record contained medical records concerning Ms. Herring's cardiac events, her emergent (but

---

[1] The Social Security regulations provide:

> Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b).

conservative) treatment of them, and her discharge from hospitalization, twice, without significant physical limitations. Second, the record contains no evidentiary gaps, and Plaintiff identifies no prejudice.

While the evidentiary record is not robust, it does not leave gaps. As the ALJ noted, Ms. Herring's November 13, 2019 treatment records show she had a coronary angiography and left heart catheterization with PCI to mid LAD with placement of a stent. The heart catheterization confirmed Ms. Hearing had suffered a non-ST elevation (NSTEMI) myocardial infarction. Following the stent procedure and a total of three days in the hospital, Ms. Herring was discharged in an improved and stable condition with activity instruction "as tolerated, increase gradually." R. 397; *see also* R. 22, 388–90, 395–416, 451–70, 482–91.

As the ALJ discussed, again in April 2021, treatment records show Ms. Herring suffered a NSTEMI myocardial infarction. On April 11, Plaintiff was admitted to Baptist Medical Center East and discharged to Baptist Medical Center South on April 13. *See* R. 601. She was in stable condition and chest pain free at the time of her transfer. R. 605. Plaintiff was then discharged from Baptist Medical Center South on the following day, April 14. R. 671. She had a coronary angiography and left heart catheterization with a post percutaneous transluminal coronary angioplasty (PTCA) of the ostial segment of the major diagonal branch artery with a kissing balloon inflation within the old stent in the mid LAD. R. 22–23, 671–72. The catheterization results revealed a critical 95–99% stenosis in the ostial segment of the major diagonal branch artery across the mid LAD stent struts, which was treated with the balloon inflation. R. 673–74. Another stent was not deployed due to a

dominant wraparound LAD. *Id*. The medical records the ALJ cited reflect that the provider concluded the PTCA with guideline-directed medical therapy would be helpful to relieve Ms. Herring's reported symptoms. R. 674. The provider's notes suggest that if symptoms recur and the lesion must be addressed, Ms. Herring will need a bifurcation stenting technique like a reverse crush. R. 674; *see also* R. 23. Ms. Herring was, once again, discharged having improved following this procedure and was to resume physical activity "as tolerated." R. 674.

Notably, in his decision, the ALJ also reviewed Ms. Herring's hypertension and found that neither that nor her cardiac condition were supported by objective medical evidence warranting the severity of a listing level. He also noted no significant end organ damage, and that the medical records indicate control with compliant medication. R. 23; *see also* R. 7F, 9F.[2] Based upon these findings, among others related to her headaches, diabetes, and obesity, and his review of the entire record, the ALJ concluded that the appropriate limitations for Plaintiff included a sedentary level of exertion and a further restriction to a work environment so as not to be exposed to hazardous conditions or pulmonary irritants. R. 20–21.

The ALJ found the prior administrative findings of both Dr. Elizabeth Joe and Dr. Alton James unpersuasive as inconsistent with the evidence as a whole. Dr. Joe, a state

---

[2] The record does reflect periods in which Ms. Herring was unable to afford her medication and that this was the cause of her periodic medication noncompliance. R. 23–24. For instance, the ALJ noted that a few months prior to the April 2021 cardiac event, she had discontinued taking Brilinta after losing her insurance. The ALJ also noted that Plaintiff continued smoking against the advice of medical professionals. The parties do not raise any issue related to the ALJ's consideration of Plaintiff's periodic failure or inability to take her medications.

agency medical advisor, found appropriate a range of medium work for Plaintiff, while Dr. James found a range of light work for Plaintiff. R. 25; *see* R. 80–88, 98–104. Neither of these administrative findings had the benefit of the 2021 medical records, as the findings were issued in 2020. Contrary to the findings of these doctors, the ALJ found on a review of the whole record, and giving Plaintiff the benefit of the doubt, only the sedentary level of exertion was appropriate. R. 25.

The undersigned concludes that the ALJ fulfilled his obligation to develop a full and fair record in this case, and his failure to order a consultative examination did not result in unfairness or clear prejudice to Plaintiff. Notably, at no time during the hearing before the ALJ did Plaintiff or her counsel request a consultative examination.[3] Additionally, it appears the ALJ considered all the medical records that existed, and Plaintiff does not challenge the accuracy of these records or the ALJ's analysis of these records.

Most importantly, Plaintiff has not identified any inconsistencies or insufficiencies in the record that would necessitate a consultative examination or demonstrate "evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand to the Secretary." *Graham*, 129 F.3d at 1423. Specifically, Plaintiff "has failed to point to anything in the record which suggests that additional medical evidence specific to [her heart condition] might be gathered, nor has [she] alleged undiscovered facts or an undeveloped avenue of inquiry." *Id.* Instead, Plaintiff argues, in conclusory fashion and in four sentences, that the "medical evidence of record pertaining to Herring's heart condition

---

[3] At the hearing, Plaintiff's counsel suggested that he would obtain a computer printout of Plaintiff's medications to supplement the record. R. 65–66.

does not provide sufficient information for the ALJ to determine the extent of Herring's physical limitations" and "does not provide the ALJ sufficient information to exclude from the RFC the limitations alleged by Herring as to physical activity, such as standing, walking, sitting[,] and washing dishes due to being out of breath." Doc. 5 at 7.

However, as the ALJ noted, Plaintiff testified that she contributes at home to help her adult daughter with whom she lives with some chores, like dishes and laundry. She reported that she could wash dishes for five to seven minutes before becoming out of breath and requiring she sit down. She testified she could stand in one area about 10 minutes and sit for about seven to 10 minutes. She claimed to lay down most of the day. She does not drive because she has not had identification in years. R. 48–49, 52, 54–58. But, Plaintiff does not indicate why any of the purported physical activity limitations she allegedly possesses would necessitate a different RFC or that a consultative examination could reasonably have changed the outcome of the case. The ALJ reviewed Plaintiff's claims of daily living limitations and found that her testimony, when reviewed with the medical evidence, was somewhat inconsistent and failed to exclude a sedentary exertion level. R. 21–22, 24–25. And, as noted, Plaintiff was discharged after being treated for her last cardiac event without significant restrictions and with expectation that the conservative procedure would alleviate her reported presenting symptoms. *See* R. 25. The undersigned is not persuaded otherwise by Plaintiff's vague, conclusory argument. An ALJ need not order a consultative examination when the record contains sufficient evidence to support a determination, as it does in this case. *See Doughty*, 245 F.3d at 1281; *see also* 20 C.F.R. § 404.1519a.

The records support the ALJ's RFC determination, and an additional opinion from a doctor was not necessary. Besides showing no evidentiary gaps, Ms. Herring fails to show she was prejudiced by the absence of a consultative exam. Ultimately, Plaintiff must bear the responsibility and consequences for the limited medical record, as it was her burden, not the ALJ's, to produce medical evidence supporting her claim for disability. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (holding that the RFC was supported by substantial evidence, so no consultative exam need be ordered). Because the medical records contained enough information for the ALJ to make an RFC determination, there was no requirement to order a consultative exam. *Schrimpsher v. Kijikazi*, No. 4:21-CV-472-CLM, 2022 WL 16924102, at *3 (N.D. Ala. Nov. 14, 2022) ("[Plaintiff] hasn't pointed to any evidentiary gaps in the record, and he was represented during the administrative process, so he had a duty to produce evidence related to his disability. . . . Plus, [Plaintiff] can only speculate that a consultative exam . . . would provide evidence that supported his claim of disability. Speculation isn't a basis for an ALJ to order a consultative exam.") (citing 20 C.F.R. § 404.1512(a); § 404.1519a); *Outlaw v. Barnhart*, 197 F. App'x. 825, 828 (11th Cir. 2006) (finding the ALJ did not err in refusing to order a consultative exam because the record contained extensive medical records about the claimant's physical complaints); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). To the extent Plaintiff believes additional medical evidence would have changed the outcome of this case—though she does not make clear that is her argument or what evidence that might be—she failed to obtain it, failed to

10

provide any reasoning as to why she did not or could not obtain it, and failed to demonstrate that the current medical evidence of record was insufficient to support the ALJ's RFC and disability determination. Thus, the ALJ did not err in failing to order a consultative examination under these circumstances, and the ALJ had sufficient evidence in the record to support Ms. Herring's RFC determination. *See Johnson v. Comm'r, Soc. Sec. Admin*, 618 F. App'x 544, 551 (11th Cir. 2015) (finding the ALJ was presented with ample evidence of the claimant's physical impairment to make an informed decision based on record available).

## V.   CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1.   Plaintiff's Motion for Summary Judgment (Doc. 5) is DENIED;

2.   The Commissioner's Motion for Summary Judgment (Doc. 8) is GRANTED; and

3.   The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 15th day of June, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE